**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PEARLIE FURLOW, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 4:25-CV-542 PLC** |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff Pearlie Furlow seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano, denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

### I.    Background and Procedural History

On July 5, 2022, Plaintiff filed an application for DIB, alleging she was disabled as of November 1, 2020 due to cervical stenosis osteoarthritis, lumbar stenosis osteoarthritis, bulging disc, left shoulder rotator cuff problem, joint pain, lupus and restless legs. (Tr. 63, 169) The Social Security Administration (SSA) denied Plaintiff's claim initially in April 2023, and on reconsideration in July 2023. (Tr. 63-80) Plaintiff filed a timely request for a hearing before an administrative law judge (ALJ). (Tr. 96-97) The SSA granted Plaintiff's request for review and conducted a hearing in January 2024. (Tr. 29-62)

In a decision dated April 16, 2024, the ALJ determined that Plaintiff "was not under a disability within the meaning of the Social Security Act from November 1, 2020, through March 31, 2023, the date last insured." (Tr. 15) Plaintiff subsequently filed a request for review of the

1

ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 1-6)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II.    Evidence Before the ALJ

Plaintiff, born February 19, 1968, testified that she lived in a house with her husband and three adult sons.  (Tr. 39)  She testified that she completed high school, and did not serve in the military.  (Tr. 41)  Plaintiff stated that she last worked briefly for FedEx in February 2021.  (*Id.*) Prior to that, Plaintiff worked for Convergys as a customer service representative, and for Express Scripts as a patient care advocate.  (Tr. 42)

With respect to her abilities and activities, Plaintiff said that during a typical day she would get herself ready, take her son to work[1], and then come home and try and do some housework. (Tr. 47)  She stated that she was able to dust, vacuum, and mop, but only for 20 to 30 minutes before needing to stop and rest.  (*Id.*)  Plaintiff testified that she cooked once or twice a week, but often had to sit while doing so.  (Tr. 47-48)

Plaintiff stated that she had trouble typing and writing, because her fingers would jam or lock.  (Tr. 48)  She further claimed to have weakness in her hands, such that she needed to use both hands to open doors.  (Tr. 49-50)

When the ALJ asked Plaintiff about the physical problems she experienced that affected her ability to work, Plaintiff responded as follows:  "My back, upper and lower back, especially around the lumbar, my knees, my joints, my hands, my shoulder, my neck….[W]hen I'm sitting too long, I feel the pain [in my back] coming on.  And when I'm walking, I can't walk too long

---

[1] Plaintiff testified that she had a current driver's license, and drove her son to work on a daily basis.  (Tr. 39-40)  She stated that when she was in the car, her legs "jammed up" and her knees popped.  (Tr. 40)

because the—I feel the pain in my back.  Standing, I can't stand too long."[2]  (Tr. 44)  Plaintiff stated that she was able to sit for up to 30 minutes, but then would "have to get up and move around, stretch my back.  And I also have a[n] ice pack that I put on my back when the pain is excruciating."  (*Id.*)  Plaintiff claimed she experienced pain and popping in her knees, and wore knee braces every day.  (Tr. 45, 55)

With respect to her hands, Plaintiff testified that she had trouble picking up items, and often dropped them if she was not careful.  (Tr. 45)  She further stated that her fingers locked up at times.  (*Id.*)  Plaintiff recounted that she had surgery on her left shoulder after having an accident at work, and that she continued to have shooting pain on that side.  (Tr. 45-46)  She said she had trouble reaching overhead with her left arm, and was unable to push on that side.  (Tr. 46, 51)  Plaintiff noted she was able to lift ten pounds.  (Tr. 46)

A vocational expert testified at the hearing.  (Tr. 56-61)  The ALJ asked the vocational expert to classify Plaintiff's past relevant work, which he did as follows:  "The Claimant worked as an order clerk.  The DOT is 249.362-026.  It is sedentary, semi-skilled, SVP[3]:  4."  (Tr. 57)[4] The ALJ then asked the vocational expert to consider a hypothetical individual similar in age, education and work experience to Plaintiff, and with the following limitations:

> This hypothetical individual can lift up to 10 pounds occasionally.  This hypothetical individual can stand and walk for about two hours and sit for up to six hours in an eight hour workday with normal breaks.
>
> This hypothetical individual can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds.  This hypothetical individual can occasionally balance, stoop, kneel, crouch, and crawl.

---

[2] Plaintiff clarified that she was able to walk for ten minutes, and stand for fifteen minutes "at the most".  (Tr. 44-45)

[3] SVP, or Specific Vocational Preparation, is intended to be a measure of the required level of specific occupational training and experience necessary to perform the basic functions of a job.

[4] The ALJ clarified that the above description encompassed Plaintiff's past positions with both Convergys and Express Scripts.  (Tr. 57)

> This hypothetical individual must avoid concentrated exposure to excessive vibration and operational control of moving machinery.  This hypothetical individual must avoid unprotected heights and exposure to hazardous machinery.

(Tr. 57)  The vocational expert opined that such an individual would be able to perform Plaintiff's past relevant work, both as Plaintiff performed same and as generally performed.  (*Id.*)  When the ALJ altered the hypothetical to state the individual was unable to reach overhead using the left upper extremity, and could only frequently handle objects using the bilateral upper extremities, the vocational expert testified the prior work would remain.  (Tr. 58)  Should the hypothetical individual only be able to occasionally handle objects using the bilateral upper extremities, however, the vocational expert testified the past work would be eliminated because "this position requires frequent bilateral use of the hands and fingers."  (*Id.*)

Under questioning from Plaintiff's representative, the vocational expert stated that even one absence per month over two consecutive months could result in termination.  (Tr. 60)  The vocational expert further testified that any more than 10 percent off-task behavior, including needing to sit and/or stand unpredictably throughout the day, would result in termination.  (Tr. 60-61)

With regard to Plaintiff's medical records, the Court considers the facts set forth in Plaintiff's Statement of Uncontroverted Material Facts, all of which the Commissioner admits.  (ECF Nos. 17, 20-1)  The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III.    Standards for Determining Disability Under the Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health*

*& Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity (RFC), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(g).

IV.     **The ALJ's Decision**

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520(a), and found that Plaintiff:  (1) did not engage in substantial gainful activity during the period from her alleged onset date of November 1, 2020, through her date last insured of March 31, 2023; and (2) had the following severe impairments:  degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral knees and left shoulder, obesity, and lupus, that significantly limited her ability to perform basic work activities as required by SSR 85-28.  (Tr. 16)  At step three, the ALJ concluded that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 17-18)

The ALJ found that, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 19)  For example, the ALJ noted that although Plaintiff continued to report left shoulder pain and exhibit tenderness of the acromioclavicular joint after her left shoulder surgery in June 2019, there was no evidence of a recurrent rotator cuff tear.  (Tr. 19-20)  Further, while Plaintiff exhibited difficulty with manipulating very small objects, there was no evidence of difficulty with gross manipulation.  (Tr. 20)  And while an MRI of Plaintiff's lumbar spine showed a bulging disc at L2-3 and a "minor" disc bulge at L4-5, Plaintiff ambulated with a normal, steady gait and did not require an assistive device for ambulation.  (*Id.*)

The ALJ then turned to the medical opinions in the record.  State agency medical consultants Michael O'Day, D.O. (Family or General Practice), and Donald Nelson, M.D.

(Gastroenterology), provided physical RFC evaluations on April 11, 2023, and July 6, 2023,

respectively. (Tr. 63-70, 72-79) The ALJ found their reports somewhat persuasive, as follows:

> They opined that the claimant can perform sedentary exertional work with frequently climb ramps or stairs, occasionally climb ladders, ropes or scaffolds, frequently balance, stoop, kneel, crouch and crawl and avoid concentrated exposure to vibration and hazards. Their assessments, are well-supported by the diagnostic imaging, and physical examination findings discussed above, and are consistent with the record as it existed at the time that they reviewed the evidence. However, additional medical evidence has been submitted since these assessments were rendered including additional information concerning the claimant's lupus, and left shoulder impairment, which support additional physical limitations (Exhibits 11F at 24; 15F at 4; 24F).

(Tr. 21)

The ALJ further considered the opinion of Plaintiff's treating physician, Melissa Hollie,

M.D., and found it not persuasive, as follows:

> Dr. Hollie opines that the claimant is incapable of completing a full eight-hour workday at the sedentary exertional level, can never balance, kneel, crouch, crawl, or stoop, would miss 3, or more, days of work per month, and would need to take a 15-to-20-minute rest break every 1 to 2 hours. This degree of limitation is not supported by Dr. Hollie's own physical examination findings, which are cursory, and largely unremarkable (Exhibit 22F). Nor are they consistent with other examination findings, such as those made at the claimant's consultative physical examination (Exhibit 10F). As discussed above, while the claimant's diagnostic imaging and examination findings support a restriction to sedentary work, as well as the postural, manipulative, and environmental restrictions adopted in this decision, the evidence does not support the debilitating functional limitations opined to by Dr. Hollie.

(Tr. 21)

After "careful consideration of the entire record," the ALJ determined that through the date

last insured Plaintiff had the RFC to perform sedentary work, as follows:

> [S]he can lift up to 10 pounds occasionally. She can stand and/or walk for about 2 hours, and sit for up to 6 hours in an 8-hour work day, with normal breaks. She can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She

> can never reach overhead using the left upper extremity. She can frequently handle objects using the bilateral upper extremities. She must avoid concentrated exposure to excessive vibration, and operational control of moving machinery. She must avoid unprotected heights, and exposure to hazardous machinery.

(Tr. 18) Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform her past relevant work as an order clerk, as actually and generally performed. (Tr. 21-22) The ALJ noted this work "did not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" (Tr. 21) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, "at any time from November 1, 2020, the alleged onset date, through March 31, 2023, the date last insured[.]" (Tr. 22)

**V.    Discussion**

Plaintiff claims the ALJ failed to properly evaluate the medical opinion evidence in the record. (ECF No. 16) The Commissioner counters that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff is not disabled. (ECF No. 20)

A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are

9

supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B.  Consideration of Medical Opinion Evidence

Plaintiff filed her application for benefits after March 27, 2017.  Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c.  Under this regulation, an ALJ considers all medical opinions equally and evaluates their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies.  20 C.F.R. § 404.1520c(c).  An ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."  20 C.F.R. § 404.1520c(b).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [he] considered the supportability and consistency factors . . . in [the] determination or decision."  20 C.F.R. § 404.1520c(b)(2).  An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal.  *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucas v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was

10

legal error)).  *See also Pipkins v. Kijakazi*, No. 1:20CV161 CDP, 2022 WL 218898, at \*4 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination); *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at \*5 (E.D. Mo. Sept. 29, 2021).  An ALJ need not explain in his or her decision how he or she considered the other factors.  20 C.F.R. § 404.1520c(b)(2).

The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  In articulating how he considered the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, that the physician did not examine the claimant, or that the physician did or did not provide a detailed explanation for the opinion.  *Starman*, 2021 WL 4459729, at \*4 (listing cases).  The Regulation requires "more than a conclusory statement as to the supportability…factor[] so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions."  *Hirner v. Saul*, No. 2:21CV38 SRW, 2022 WL 3153720, at \*9 (E.D. Mo. Aug. 8, 2022); *see also Pipkins*, 2022 WL 218898, at \*4 ("Because the ALJ's cursory statement neither articulates the persuasiveness of [the doctor's] opinion nor explains the supportability… factor[] in evaluating the opinion, it runs afoul of the Regulations.").

In this case Dr. Melissa Hollie, Plaintiff's treating physician, completed a Medical Source Statement on January 5, 2024.  (Tr. 1366-1369)  Dr. Hollie found that Plaintiff had exertional limitations as follows:  stand, walk and/or sit less than 2 hours in an 8-hour workday; lift and/or carry less than 10 pounds occasionally.  (Tr. 1366, 1368)  She explained that Plaintiff should engage in "very limited pushing/pulling due to low back pain from lumbar radiculopathy".  (*Id.*)  Dr. Hollie opined that Plaintiff had postural limitations as follows:  never climb ramps/ladders/ropes/scaffolds, balance, kneel, crouch, crawl or stoop.  (*Id.*)  She further opined that Plaintiff's manipulative limitations included occasionally reaching, grasping, gripping, fingering, feeling and handling.  (*Id.*)  Dr. Hollie explained that performing the above activities might "flare [Plaintiff's] lumbago with lower extremity paresthesia and weakness."  (*Id.*)  She noted the stated limitations were supported by Plaintiff's physical examinations on January 6, January 14 and March 4, 2022, and an MRI undergone on or about April 10, 2023.  (*Id.*)  Finally, Dr. Hollie stated Plaintiff's symptoms and treatment thereof would cause her to miss work three times or more per month, she would need to take unscheduled breaks every 1-2 hours during the workday, and would remain off-task for 15-20 minutes before returning to work.  (Tr. 1367, 1369)

As noted above, the ALJ found Dr. Hollie's opinion not persuasive, as follows:

> Dr. Hollie opines that the claimant is incapable of completing a full eight-hour workday at the sedentary exertional level, can never balance, kneel, crouch, crawl, or stoop, would miss 3, or more, days of work per month, and would need to take a 15-to-20-minute rest break every 1 to 2 hours. This degree of limitation is not supported by Dr. Hollie's own physical examination findings, which are cursory, and largely unremarkable (Exhibit 22F).  Nor are they consistent with other examination findings, such as those made at the claimant's consultative physical examination (Exhibit 10F). As discussed above, while the claimant's diagnostic imaging and examination findings support a restriction to sedentary work, as well as the postural, manipulative, and environmental restrictions adopted in this decision, the evidence does not support the debilitating functional limitations opined to by Dr. Hollie.

12

(Tr. 21)

Plaintiff contends that the ALJ failed to properly consider the supportability of Dr. Hollie's opinion.  As support for this assertion, Plaintiff notes the ALJ found the opinion not persuasive because "Dr. Hollie's own physical examination findings…are cursory, and largely unremarkable (Exhibit 22F)".  (ECF No. 16, P. 7 (internal quotation marks omitted)).  As Plaintiff points out, however, Exhibit 22F consists of Plaintiff's office treatment records with Dr. Hollie from August 15, 2023 to January 5, 2024, all of which post-date Plaintiff's date last insured of March 31, 2023. (ECF No. 16, P. 8; *see also* Tr. 1370-1378)  Furthermore, Plaintiff notes Dr. Hollie treated Plaintiff for diabetes, a vitamin D deficiency and high cholesterol on August 15, 2023, November 28, 2023, and January 5, 2024; and performed a gynecological examination on November 16, 2023.  (*Id.*) Plaintiff concludes the ALJ "failed to explain how treatment for diabetes, high cholesterol and a well-woman exam, which postdate the date last insured, provide any evidence to reject Dr. Hollie's medical opinion for the alleged period of disability." (*Id.*)

More importantly, Plaintiff notes the ALJ failed to "mention or evaluate whether the treatment notes to which Dr. Hollie actually referred in her medical opinion support the opinion." (ECF No. 16, P. 8)  As noted above, Dr. Hollie posited her stated limitations were supported by Plaintiff's physical examinations on January 6, January 14 and March 4, 2022, and an MRI undergone on or about April 10, 2023.  (Tr. 1366, 1368)  Plaintiff summarizes the cited evidence as follows:

> Specifically, on physical examination on January 6, 2022, Dr. Hollie observed moderate distress with right flank pain, midline low cervical spinous tenderness and some left paraspinal moderate-sized muscle cords, left hand.  (Tr. 463)
>
> On physical examination on January 22, 2022, Dr. Hollie observed: moderate distress; neck pain; low back pain; midline low cervicolumbar spinous tenderness with some left cervical paraspinal atrophy; grip strength

13

> reduced to 4/5 in the left hand; triceps strength reduced to 4/5 on the left; positive straight-leg raise test (SLR) on the right; and hamstring strength reduced to 4/5.  Dr. Hollie diagnosed radiculopathy of the cervical region and radiculopathy of the lumbar region.  (Tr. 461)  Dr. Hollie ordered an MRI and x-rays to evaluate left hand paresthesia/weakness with neck pain. (Tr. 462)
>
> An MRI of the cervical spine, dated January 26, 2022, which Dr. Hollie ordered, revealed:  C3-4 disk protrusion is asymmetric to the right, bilateral facet osteoarthritis and moderate neural foraminal stenosis; C4-5 disk protrusion, bilateral facet osteoarthritis and right uncovertebral joint osteoarthritis, and moderate-to-severe right neural foraminal stenosis; C6-7 disk protrusion is slightly asymmetric to the right, bilateral facet and uncovertebral joint osteoarthritis are also present, causing mild-to-moderate bilateral neural foraminal stenosis; C7-T1 disk protrusion and bilateral facet osteoarthritis, moderate left neural foraminal stenosis; and T1-2 disk protrusion and bilateral facet osteoarthritis, causing mild-to-moderate right neural foraminal stenosis.  (Tr. 496-497)

(ECF No. 16, PP. 8-9)

Plaintiff concludes as follows:  "[Plaintiff] contends that Dr. Hollie's objective clinical findings and the 2022 MRI of the cervical spine, none of which the ALJ mentioned, much less evaluated, support Dr. Hollie's opinion that [Plaintiff] cannot reach, handle and finger frequently, which is 6 hours every day, 5 days per week, as required by competitive work, and she would consistently miss work 1 time per month or be off task more than 10% of the workday.  The ALJ did not mention or evaluate whether any of Dr. Hollie's clinical findings, such as paraspinal atrophy, tenderness to palpation, reduced strength, positive SLR and moderate-to-severe neural foraminal stenosis, and the MRI results from 2022, support Dr. Hollie's medical opinion.  The ALJ [thus] failed to properly evaluate the supportability of Dr. Hollie's medical opinion, as required by 20 CFR § 404.1520c(c)(1)."  (ECF No. 16, PP. 9-10)

Upon consideration of the foregoing, the Court finds the ALJ failed to adequately address the supportability of Dr. Hollie's medical opinion.  The ALJ cited to medical records for encounters that post-dated Plaintiff's date last insured, and were for conditions not at issue here.

14

Furthermore, the ALJ omitted from his discussion any reference to the treatment notes to which Dr. Hollie actually referred in her medical opinion.

As noted above, an ALJ's failure to comply with the opinion-evaluation regulation is a legal error that warrants remand. *See Bonnett*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus*, 960 F.3d at 1069-70 (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulation, as failure to comply with opinion-evaluation regulation was legal error)); *Pipkins*, 2022 WL 218898, at *4 (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination). On remand, the ALJ must fully evaluate and explain the supportability of the medical opinion evidence, in accordance with 20 C.F.R. § 404.1520c. *See Bement v. Kijakazi*, No. CV 23-3010, 2023 WL 8720686, at *3 (W.D. Ark. Dec. 18, 2023).[5]

---

[5] Because remand is required for reevaluation of the supportability of Dr. Hollie's opinion, the Court need not address Plaintiff's argument regarding consistency. *See Hirner*, 2022 WL 3153720, at *10. Any reassessment of the supportability of Dr. Hollie's opinion will necessarily require reassessment of the opinion's consistency with other medical opinions and evidence in the record. *Id.* (citing, *e.g., Hiller v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand."); *Berry v. Kijakazi*, 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021) ("Because remand is required, the Court does not address all of Plaintiff's arguments.")).

15

## VI.     Conclusion

Accordingly, for the reasons stated above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of May, 2026.